# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**KAREN ANDERSON AND TERRELL ANDERSON**                      **PLAINTIFFS**

**VERSUS**                      **CIVIL ACTION NO. 2:08-cv-245KS-MTP**

**LITTON LOAN SERVICING, LP;**
**AND JOHN DOES 1-5**                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#51]** and a Motion to Strike Response **[#59]** filed on behalf of the defendant, Litton Loan Servicing, L.P., ("Litton"). The court, having reviewed the motions, the responses, the pleadings and exhibits on file, the authorities cited, the briefs of counsel and being otherwise fully advised in the premises finds that the motions are not well taken and should be denied. The court specifically finds as follows:

## FACTUAL BACKGROUND

The plaintiffs, Karen and Terrell Anderson, executed a Deed of Trust in favor of Alliance Funding, a Division of Superior Bank FSB, in conjunction with a loan in the amount of $62,050.00 for the purchase of certain property located at 715 N. 19th Avenue in Hattiesburg, Mississippi on July 30, 2001. Karen also executed the underlying adjustable rate note secured by the deed of trust but Terrell did not. Former

defendant Countrywide assumed servicing responsibilities in relation to the loan shortly after its origination.

The plaintiffs became delinquent on this loan in early 2005, due to Mr. Anderson's loss of employment. Thereafter, Countrywide sent a Notice of Default and Acceleration to the plaintiffs on May 3, 2005. While the Andersons were in default, the subject property was damaged by Hurricane Katrina in August of 2005. Following the storm, Countrywide granted the plaintiffs a forbearance period of four months, thereby suspending the due dates for their loan payments.

According to Countrywide, the plaintiffs were obligated to bring the loan current at the end of the forbearance period. The plaintiffs allege that they had an understanding, based on oral communications with certain of the defendant's unnamed employees, that the suspended payments would be added to the end of the note. When Mrs. Anderson discovered in January of 2006 that the suspended payments were all due, she apparently requested and received an additional forbearance. However, the plaintiffs failed to bring their loan current and only made one subsequent payment of $1,000.00, on January 4, 2006, to Countrywide. Countrywide transferred the servicing of the loan to defendant Litton on May 1, 2006. At this time, the plaintiffs were ten months delinquent on their note.

On May 5, 2006, Litton sent a Validation of Debt Notice to the plaintiffs, which reflected the amount of the debt as $67,260.25. Litton and Karen Anderson then entered into a repayment plan agreement to allow her to bring her note current. The first payment was scheduled for August 1, 2006, and Litton contends that the plaintiff failed to make the payment, and apparently, that the plaintiffs failed to make any

payments under the agreed plan. However, the plaintiffs have produced a document from Western Union indicating that the original down payment of $1600.00 and the regular monthly payments of $881.00 were sent up through the July 1, 2007 payment. Litton, apparently, denies receiving this more than $12,000 in loan payments.

Consequently, Litton began sending demand letters to Karen Anderson at the property address. The first of these is dated October 2, 2006, and was styled as a "NOTICE OF DEFAULT AND INTENT TO ACCELERATE." This was followed with an identical letter on November 6, 2006. Beginning in March of 2007, Litton began sending "Loss Mitigation Letter[s]" to Karen Anderson at the property address. This letter requested financial information so that Litton could assist in preparing a repayment plan or identify other loss mitigation options.

Karen Anderson does not deny receiving these notices even though she has testified that she does not remember getting them. She has testified that she had become frustrated in dealing with Litton because she had agreed to up her mortgage payment more than $300.00 per month to cure the deficiency created by the Countrywide suspended payment situation, that she had timely made the payments via Western Union and yet she was still being harassed about being in default. She has stated that she repeatedly requested payoffs and an accounting to no avail.

Litton continued sending default and demand letters to the plaintiffs every few days. However, in July of 2007, the plaintiffs stopped making payments, vacated the property and moved to Georgia after being unable to resolve the dispute with Litton over the alleged defaulted payments.

On August 30, 2007, Litton once again sent a demand letter to the plaintiffs

3

informing them of a problem with their payment and requesting that the plaintiffs contact Litton immediately since foreclosure action could begin soon or had already begun. Litton continued to send the plaintiffs this same information in the months that followed. Thereafter, pursuant to the terms of the Deed of Trust, Litton foreclosed on the property in December of 2007.

The plaintiffs commenced this lawsuit on October 8, 2008 in the Circuit Court of Forrest County, Mississippi alleging causes of action including negligence, negligent infliction of emotional distress, wrongful foreclosure and rescission, breach of contract, bad faith breach of contract, and violations of the Fair Debt Collections Practice Act. The case was timely removed to this court shortly thereafter. In their Complaint, the plaintiffs fail to distinguish which claims are levied against each individual defendant, but instead make the claims against the defendants collectively. Each defendant has filed separate motions for summary judgment and the court has previously granted summary judgment in favor of defendant Countrywide. This order deals only with defendant Litton's motion.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is

bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

It appears from the record in this case that the plaintiffs timely made their payments from August of 2006 through July of 2007 in conformity with the repayment agreement entered with Litton, but that Litton failed to credit the payments to the plaintiffs. Instead, Litton commenced a course of conduct to continually harangue the plaintiffs for being in default and allegedly ignored Karen Anderson's repeated requests for an accounting. It is true that the plaintiffs ultimately became frustrated in dealing with Litton and ceased making payments - after pouring more than $12,000 into the property which Litton has been unable to account for.

This apparent dispute as to whether the payments were actually made turns on the Western Union document that indicates, without doubt, that the payments were timely made. However, the document was not produced until after the summary judgment motion was filed, and, predictably, is the subject of a motion to strike filed by Litton. In reviewing the plaintiffs' response to the motion to strike and considering her move to Georgia and her efforts to locate her own records, the court finds that the Karen Anderson used due diligence in pursing the information from Western Union after she was questioned about it in her deposition. Counsel timely produced the document

7

once it came into his possession and to strike it would be a severe injustice. The document shows clearly that the plaintiffs timely made their agreed payments for a number of months but Litton did not credit them and pursued a steady course of unwarranted demands for payment and threats of foreclosure. Therefore, the motion to strike **[#59]** shall be denied. If, however, the defendant questions the authenticity of the document and either party needs time to take the deposition of a Western Union representative, such will be considered upon proper motion.

Karen Anderson has testified that she tried repeatedly to get an accounting of her payments but to no avail. She also has provided evidence that she made a qualified written request for payoff/accounting information on October 10, 2007, and that her attorney also made such a request on December 3, 2007, both of which were either ignored or not timely responded to. Karen has testified that these requests were made after numerous verbal requests were made in phones calls between Karen Anderson and the servicer. She has asserted that the only thing that she could get from Litton were demands for more money.

The Qualified Written Request is addressed in the Federal Servicer Act which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605. Subsection (e) states as follows:

**(e) Duty of loan servicer to respond to borrower inquiries**

**(1) Notice of receipt of inquiry**

**(A) In general**

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the

8

borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

### (B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -

> **(i)** includes, or otherwise enables the servicer to identify the name and account of the borrower; and

> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

### (2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall -

> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes -

>> **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

>> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes -
>
>> **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
>
> **(3) Protection of credit rating**
>
> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

12 U.S.C. § 2605(e).

The plaintiffs have asserted that Litton failed to provide a written response to either the request of the homeowner or the letter from the undersigned attorney. Litton has, however, provided a copy of a written response to Anderson's attorney which was sent within the sixty day requirement but long after foreclosure of the plaintiffs' property. The plaintiffs also contend that Litton failed to take action as required under Subsection (e)(2) by sending the required documentation. Under (e)(2)(B)(ii), the servicer is required to provide the borrower with the name and telephone number of an individual employed by, or the office or department of the servicer who can provide assistance to the borrower. This same requirement of a name and phone number of an individual is repeated in Subsection (e)(2)(C)(ii) which the plaintiff contends clearly emphasizes an issue recognized by Congress of the need to be able to speak with someone that can give a straight answer. Mrs. Anderson testified repeatedly as to how difficult it was to

get an answer from anyone over the phone when she had to speak to someone different every time she called.

Karen Anderson testified that her primary complaint against Litton was their failure to communicate with her on the things she needed and the fact that she was not being given credit for the payments she was making. She testified that she and her husband wanted to sell the house or, alternatively, rent it in case they decided to move back to Hattiesburg. The plaintiffs assert that Litton's failure to properly answer Karen Anderson's inquiries, both oral and written, should be considered by a jury. This court agrees.

In light of the foregoing, the court concludes that the plaintiffs have shown a genuine dispute of material fact regarding the conduct of Litton in accelerating their debt under the note and proceeding with foreclosure on their property which precludes summary judgment.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#51]** filed on behalf of the defendant, Litton Loan Servicing, LP is Denied and that Litton's Motion to Strike **[#59]** is denied and that all other pending motions are denied as moot.

SO ORDERED AND ADJUDGED this the 3rd day of February, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE