# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**KAREN ANDERSON AND TERRELL ANDERSON**  PLAINTIFFS

**VERSUS**  CIVIL ACTION NO. 2:08-cv-245KS-MTP

**LITTON LOAN SERVICING, LP;**
**AND JOHN DOES 1-5**  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Reconsideration of the Denial of Summary Judgment **[#69]** filed on behalf of the defendant, Litton Loan Servicing, L.P., ("Litton"). The court, having reviewed the motion, the response, the pleadings and exhibits on file, the authorities cited, the briefs of counsel and being otherwise fully advised in the premises finds that the motion is well taken and should be granted and the former opinion denying summary judgment should be withdrawn to the extent it is inconsistent herewith. The court specifically finds as follows:

## FACTUAL BACKGROUND

The plaintiffs, Karen and Terrell Anderson, executed a Deed of Trust in favor of Alliance Funding, a Division of Superior Bank FSB, in conjunction with a loan in the amount of $62,050.00 for the purchase of certain property located at 715 N. 19th Avenue in Hattiesburg, Mississippi on July 30, 2001. Karen also executed the

underlying adjustable rate note secured by the deed of trust but Terrell did not. Former defendant Countrywide assumed servicing responsibilities in relation to the loan shortly after its origination.

The plaintiffs became delinquent on this loan in early 2005, due to Mr. Anderson's loss of employment. Thereafter, Countrywide sent a Notice of Default and Acceleration to the plaintiffs on May 3, 2005. While the Andersons were in default, the subject property was damaged by Hurricane Katrina in August of 2005. Following the storm, Countrywide granted the plaintiffs a forbearance period of four months, thereby suspending the due dates for their loan payments.

According to Countrywide, the plaintiffs were obligated to bring the loan current at the end of the forbearance period. The plaintiffs allege that they had an understanding, based on oral communications with certain of the defendant's unnamed employees, that the suspended payments would be added to the end of the note. When Mrs. Anderson discovered in January of 2006 that the suspended payments were all due, she apparently requested and received an additional forbearance. However, the plaintiffs failed to bring their loan current and only made one subsequent payment of $1,000.00, on January 4, 2006, to Countrywide. Countrywide transferred the servicing of the loan to defendant Litton on May 1, 2006. At this time, the plaintiffs were ten months delinquent on their note.

On May 5, 2006, Litton sent a Validation of Debt Notice to the plaintiffs, which reflected the amount of the debt as $67,260.25. The plaintiffs did not dispute the amount of the debt. Litton and Karen Anderson then entered into a repayment plan agreement to allow her to bring her note current. The first payment was scheduled for

August 1, 2006, which was ultimately made by the plaintiffs, as well as subsequent payments through July of 2007.

Shortly after receiving the first payment, Litton began sending demand letters to Karen Anderson at the property address. The first of these is dated October 2, 2006, and was styled as a "NOTICE OF DEFAULT AND INTENT TO ACCELERATE." This was followed with an identical letter on November 6, 2006. Beginning in March of 2007, Litton began sending "Loss Mitigation Letter[s]" to Karen Anderson at the property address. This letter requested financial information so that Litton could assist in preparing a repayment plan or identify other loss mitigation options.

Karen Anderson does not deny receiving these notices even though she has testified that she does not remember getting them. The prior evidence submitted to the court indicated that Karen Anderson had testified that she had become frustrated in dealing with Litton because she had agreed to up her mortgage payment more than $300.00 per month to cure the deficiency created by the Countrywide suspended payment situation, that she had timely made the payments via Western Union and yet she was still being harassed about being in default. However, it is now clear that the plaintiffs' note, which was an ARM, had adjusted upward from the initial 5-6% range to more than 12%. Hence, the plaintiffs' principal and interest payment had already been increased well above the original $550.00 original payment. In fact, the new payment amount set forth in the Repayment Agreement barely covered the current principal and interest payment with the remainder applied to the considerable deficiency.

Litton continued sending default and demand letters to the plaintiffs. However, in July of 2007, the plaintiffs stopped making payments, vacated the property and

3

moved to Georgia after being unable to resolve the dispute with Litton over the alleged defaulted payments. Karen Anderson has testified that she hired her current legal counsel who advised her he would take care of the situation and advised her to stop making the payments. She has also testified that she was not able to make the payment anyway.

On August 30, 2007, Litton once again sent a demand letter to the plaintiffs at the property address informing them of a problem with their payment and requesting that the plaintiffs contact Litton immediately since foreclosure action could begin soon or had already begun. Litton continued to send the plaintiffs this same information in the months that followed with the final notice of foreclosure being sent on October 4, 2007. Thereafter, pursuant to the terms of the Deed of Trust, Litton foreclosed on the property in December of 2007.

The plaintiffs commenced this lawsuit on October 8, 2008 in the Circuit Court of Forrest County, Mississippi alleging causes of action including negligence, negligent infliction of emotional distress, wrongful foreclosure and rescission, breach of contract, bad faith breach of contract, and violations of the Fair Debt Collections Practice Act. This was more than one year after the notice of foreclosure had been sent. The case was timely removed to this court shortly thereafter. In their Complaint, the plaintiffs fail to distinguish which claims are levied against each individual defendant, but instead make the claims against the defendants collectively. Each defendant filed separate motions for summary judgment and the court previously granted summary judgment in favor of defendant Countrywide. The court previously denied Litton's motion for summary judgment. However, after having received the current motion to reconsider

4

and having conducted the pretrial conference and an additional settlement conference, the court is convinced that it acted under a misapprehension of the facts in denying the initial summary judgment motion.

## STANDARD OF REVIEW

**Reconsideration**

The Federal Rules do not recognize a "motion for reconsideration" as such. However, the Fifth Circuit has consistently stated that a motion so denominated, provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" under rule 59(e) or a motion for "relief from judgment" under Rule 60(b). The proper denomination of the motion is determined by the time within which the motion is served. If the motion is served within ten days of the rendition of judgment, it falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b). *See Ford v. Elsbury*, 32 F.3d 931, 937, n.7 (5th Cir. 1994). The present motion was filed within ten days of rendition of the original judgment, thus it will be considered under Rule 59(e), as asserted by the defendant.

"A motion for reconsideration filed within ten days of judgment is treated as a motion to alter or amend under Rule 59(e) . . . . Rule 59(e) has been interpreted as covering motions to vacate judgments, not just motions to modify or amend." *Edward H. Bohlin Co. v. Banning Co.*, 6 F. 3d 350, 353, 355 (5th Cir. 1993). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise

5

arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)(*quoting Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)). Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir.2002).

**Summary Judgment**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is

not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating

[entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

It appears from the record, and is now admitted by Litton, that the plaintiffs timely made their payments from August of 2006 through July of 2007 in conformity with the repayment agreement entered with Litton. This is where the factual error was made by the court. The record was initially not clear that Litton properly credited these payments to the plaintiffs. The court thus deduced, with the help of incorrect facts supplied by the plaintiffs, that Litton commenced a course of conduct to continually harangue the plaintiffs for being in default and allegedly ignored Karen Anderson's repeated requests for an accounting. The court acknowledged that the plaintiffs ultimately became frustrated in dealing with Litton and ceased making payments after pouring more than $12,000 into the property which the court concluded that Litton had been unable to account for.

However, the court now finds that this conclusion was in error based on the less than pellucid argument and record that was before the court. In fact, it is now clear that Litton had contemporaneously credited the plaintiffs' $881.00 monthly payment to their account and correctly applied it. As well, Litton was specifically within its contractual rights when it continued to accrue late payments on the account and continued to send collection letters and make phone calls to the plaintiffs in regard to the substantial arrearage still owed on the subject property.

Karen Anderson has testified that she tried repeatedly to get an accounting of her payments but to no avail. The court previously found that she also provided evidence that she made a qualified written request for payoff/accounting information on October 10, 2007. However, after reviewing the evidence related thereto including the

deposition of Anderson, the court concludes that such is not the case. The plaintiffs' attempt to send a written request is a handwritten note which was not received by Litton and which Karen Anderson has testified that is not her handwriting. That finding by the court was in error.

Karen has testified that she also made numerous verbal requests in phones calls between Karen Anderson and the servicer. However, Litton has produced call records indicating that Karen did request the payoff information one time in a phone call and was told to send the request in writing via facsimile. Karen did not follow up and Litton has no other records of any such request.

In its prior opinion, the court noted that the Qualified Written Request is addressed in the Federal Servicer Act which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605 and quoted the language therefrom. That was error because a review of the plaintiffs' Complaint indicates that no such claim has been made under this act. The plaintiffs' citation and argument thereto is disingenuous.

Karen Anderson testified that her primary complaint against Litton was their failure to communicate with her on the things she needed and the fact that she was not being given credit for the payments she was making. She testified that she and her husband wanted to sell the house or, alternatively, rent it in case they decided to move back to Hattiesburg. The plaintiffs originally asserted that Litton's failure to properly answer Karen Anderson's inquiries, both oral and written, should be considered by a jury. This court agreed. However, now that the situation regarding the crediting of the payments is cleared up as well as the situation regarding the written request for a payoff, the court concludes that the plaintiffs have failed to assert any issue of fact which would preclude summary judgment on Litton's original motion.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Reconsideration of the Denial of Summary Judgment **[#69]** filed on behalf of the defendant, Litton Loan Servicing, L.P., is granted and the original opinion denying the Motion for Summary Judgment filed on behalf of the defendant Litton is withdrawn to the extent it is inconsistent herewith and the Motion for Summary Judgment **[#51]** is granted and the plaintiffs' Complaint is dismissed with prejudice, and that all other pending motions are denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 5th day of March, 2010.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE